## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JEFFERY S. TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-1157-CM** |
| | ) | |
| **BOARD OF COUNTY COMM'RS OF** | ) | |
| **SEDGWICK COUNTY, KS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Jeffery S. Taylor, currently an inmate at the Norton Correctional Facility, brings this action against defendants Robert Hinshaw, the Sedgwick County Sheriff during plaintiff's incarceration at the Sedgwick County Detention Center (the "County Jail"); Jeff Easter, the current Sedgwick County Sheriff; Sedgwick County, Kansas (collectively, "the Sedgwick County defendants"); and defendant David E. Kendall, then a detention deputy at the County Jail. Plaintiff brings three claims (Counts I–III) against defendants pursuant to 42 U.S.C. § 1983, and three claims (Counts IV–VI) under the Kansas Tort Claims Act.

The Sedgwick County defendants filed a Motion for Summary Judgment (Doc. 33). Defendant Kendall brought a Motion for Summary Judgment (Doc. 35), which merely incorporates the Sedgwick County defendants' motion. The court considers defendants' motions for summary judgment. Defendants argue plaintiff's claim is barred by the Prison Litigation Reform Act ("PLRA") because plaintiff failed to exhaust his administrative remedies.

**I. Facts**

Plaintiff alleges that, on June 3, 2012, while a prisoner at the County Jail, he was subjected to unwanted sexual contact by defendant Kendall.  While the details of the incident are immaterial to resolve the issues currently before the court, the immediate aftermath, which is uncontroverted, is relevant:

- Plaintiff immediately banged on the cell door and repeatedly screamed "you raped me, you raped me."

- Defendant Kendall exited the cell before plaintiff could escape and shut the cell door.  He then told plaintiff "this was a mistake," and "we don't have to do this, I can get you whatever you want.  Please don't do this."

- Sergeant Hayes and Deputy Reed responded to the commotion and observed plaintiff standing nude in his cell, restrained with handcuffs.  Plaintiff told Sergeant Hayes that defendant Kendall had raped him, after which defendant Kendall's handcuffs were removed from plaintiff's wrists and he was allowed to dress.

- Plaintiff was taken to Via Christi St. Joseph Hospital, where a SANE-SART[1] kit was completed by the nurse, and swabs and samples were collected and sent to the Sedgwick County Regional Forensic Science Center.  After this examination, plaintiff returned to the County Jail.

On June 11, 2012, plaintiff issued an electronic inmate request stating: "i do not feel safe NOWHERE in this jail!!! i was RAPED by a deputy!!! pleeeaaassseee get me out!!!"[2]  A jail sergeant responded that plaintiff had been moved from the pod in which the alleged incident happened.  On June 13, 2012, plaintiff again used the electronic inmate request system, complaining "I HAVE BEEN THREATENED BY SEVERAL INMATES IN POD2!!! PLEASE GET ME OUT OF HERE!!! I DO NOT FEEL SAFE ANYWHERE IN THIS JAIL!!!!."  A jail sergeant responded by explaining that,

---

[1] The term "SANE-SART" is comprised of two acronyms:  (1) SANE: Sexual Assault Nurse Examiner, and (2) SART: Sexual Assault Response Team.
[2] All of plaintiff's inmate requests are produced verbatim.

because plaintiff felt threatened in the County Jail, he was placed in lockdown for his own safety.[3]  On

June 15, 2012, defendant was transferred to another detention facility.  On July 24, 2012, plaintiff's

then-counsel served a Notice of Claim pursuant to K.S.A. § 12-105b.  Sedgwick County denied

plaintiff's Notice of Claim on November 20, 2012.

This suit was filed on June 2, 2014.

## II.  Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In applying this standard, the court views the record's evidence and reasonable inferences in the

light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th

Cir. 1998).

## III.  Analysis

Defendants argue plaintiff has not exhausted his administrative remedies as required by the

PLRA, offering the declaration of Glenn Kurtz, a major at the County Jail ("Kurtz Declaration") (Doc.

34-2) as the primary support for their argument.

### A.  Exhaustion of Administrative Remedies

The PLRA requires inmate-plaintiffs to exhaust any administrative remedies that have been

provided by the state or prisons in which they are incarcerated.  *See* 42 U.S.C. § 1997e(a) ("No action

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted.").  Exhaustion of administrative remedies "applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and

---

[3] Plaintiff submitted another request that same day, which read: "I FEEL LIKE IM BEING 'SET-UP' & HARRASSED, BECAUSE YOU GUYS PUT ME IN AN AGG. POD WITH VIOLENT CRIMINALS, WHEN A VIOLENT ACT HAS JUST BEEN COMMITTED AGAINST ME!?!"  A jail sergeant issued the same response.

whether they allege excessive force or some other wrong." *Kikumura v. Osagie*, 461 F.3d 1269 (10th Cir. 2006), *overruled in part on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir.2008). "[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Accordingly, the burden of proof is on the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

In addition to the PLRA, inmates are required to exhaust administrative remedies under Kansas law, which provides:

> Any inmate in the custody of the secretary of corrections or in a county jail, prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, the warden, the sheriff, or an employee of the department of corrections or the county, while such employee is engaged in the performance of such employee's duty, as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action. Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted.[4]

K.S.A. § 75-52,138. In this case, Sedgwick County, Kansas has a resolution on point, entitled "Inmate Claim Procedure." *See* Sedgwick County, Kansas Code, Chapter 16, §§ 16-101–104.

## B. Sedgwick County's Procedures

In Sedgwick County, full exhaustion of administrative remedies occurs once an inmate completes two separate, but related procedures: the grievance procedure and the claim procedure. The grievance process is outlined in Sheriff's Order 120.01.[5] A grievance is "any complaint, issue, problem or dispute expressed by an inmate regarding the inmate's conditions of confinement." (*See* Doc. 32-2 at 6, ¶ I.A.) Inmates are required to submit a grievance within fourteen days of the event. Inmates should use an inmate request form, referred to internally as a "Kite," to file a grievance; the

---

[4] The court notes the last sentence of this statute may be preempted by the PLRA and the Supreme Court's decision in *Jones*. *See Jones*, 549 U.S. at 211. But the court need not make any findings on that issue for purposes of this opinion.
[5] Technically, both procedures are discussed in Sheriff's Order 120.01, but only the claim procedure is discussed in a separate authority—Sedgwick County, Kansas Code, Chapter 16, §§ 16-101–104.

form of which expressly states:  "Problems of an EMERGENCY NATURE or you feel your personal

safety is endangered or threatened do not use a request form, tell the pod deputy on duty immediately."

(Doc. 42-1 (emphasis in original).)  While inmates should use a Kite form, "a grievance will not be

refused if it is submitted in some other form."  (*Id*. at ¶ II.B.)  Regardless of what form a submitted

Kite takes, a pod deputy is to prepare a written report and place a copy of the report in the inmate's

file.  (*Id*. at ¶ III.A, III.D.)

If a grievance cannot be handled by the pod deputy, the inmate is to be instructed to submit the

grievance on an inmate request form, or Kite, which must include a brief explanation of the issue and

the resolution desired.  The pod deputy cannot refuse to supply or sign a Kite, and the deputy should

sign the form with his or her ID number, include the date and time the request form was received, enter

the grievance in the daily activity log, and contact a housing sergeant.[6]

If the grievance has not been resolved to an inmate's satisfaction, an inmate may appeal the

resolution.  If the situation implies potential staff misconduct or a criminal act, the administrative

lieutenant is to brief his or her division commander, and the matter may be referred to the Professional

Standards Unit or Investigations, if necessary.  (*Id*. at 7.)

Once the grievance process has been completed, including any appeals, the inmate must file a

claim pursuant to the "Inmate Claim Procedure."[7]  (Doc. 16-2 at 9–10.)  Compliance requires an

inmate "file an Inmate Claim Form with the Sedgwick County Clerk no later than thirty days after the

inmate receives the Sheriff's Office final response to the grievance or sixty days after the incident

giving rise to the claim, whichever is longer."  (*Id*. at 8.)  An inmate may file suit only after (a)

---

[6] Sheriff's Order 120.01 further details the handling of a grievance, but the remaining procedures need not be discussed.
[7] Defendants maintain that the grievance procedure and claim procedure are set out in different authorities—Sheriff's Order 120.01 and Sedgwick County, Kansas Code §§ 16-101-104, respectively.  However, the claim procedure is actually discussed by both authorities.  There is no conflict between the two authorities regarding operation of the claim procedure. But the overlap contains a terminology difference—Sheriff's Order 120.01 references a "claim" and the Sedgwick County Code references a "notice of claim."  As far as the court can tell, these terms are interchangeable, referring to the same document type.

receiving notice from the county that the county has denied an inmate's claim, or (b) sixty days following the filing of the Inmate Claim Form, whichever occurs first. (*Id.* at 10.) The Inmate Claim Procedure requires that a claim contain the following information:

> (a) The name and address of the inmate making the claim and the name and address of the inmate's attorney, if any;
> (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act(s), omission(s) or events(s) complained of;
> (c) A list of all witnesses known to the inmate with information concerning the claim;
> (d) The name and employment address of any public officer or employee involved, if known;
> (e) A concise statement of the nature and the extent of the injury claimed to have been suffered;
> (f) A statement as to whether the inmate was awaiting trial at the time of the incident giving rise to the claim or whether said inmate was being held for a conviction of a crime; and
> (g) A statement of the relief requested, including the amount of monetary damages requested, if any.

Sedgwick County, Kansas Code, Chapter 16, § 16-104(4). The statute also states, "[in] the filing of the notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim." *Id.*

### C. Plaintiff's Grievance

Defendants claim that plaintiff never filed a grievance, relying on the following evidence: (1) the Kurtz Declaration (Doc. 34-2), in which Mr. Kurtz states he completed a thorough search of the county's records but found no grievance filed by plaintiff regarding the alleged incident, and (2) copies of plaintiff's inmate request forms, or "Kites," he filed from February 9, 2012 to September 10, 2014 (*Id.* at 15–26). Nowhere in the filings does plaintiff submit a copy of a written grievance that he filed regarding defendant Kendall's alleged sexual contact.

The facts, however, show plaintiff lodged a verbal complaint with jail officials. Plaintiff did so immediately, explicitly saying, "[Sergeant Hayes], he raped me get him the fuck away from me, he

raped me."[8]  (Doc. 42-3 at 4.)  Plaintiff was taken from the County Jail to the hospital and examined.

Defendants never dispute these facts; in fact, defendants admit that a grievance can be initiated

*verbally* (Doc. 44 at 2, ¶ 13), and that inmates are informed not to use Kites for problems of an

emergency nature or where an inmate feels his personal safety is endangered or threatened—indeed,

the Kite form itself states this (Doc. 42-1).

Despite these admissions, defendants nevertheless argue plaintiff has not complied with the

grievance procedure because plaintiff's verbal complaint with Sergeant Hayes is not a grievance.

Defendants support their argument with case law, but the court finds those cases distinguishable.

Those cases involved inmates who did not comply with the procedures of their respective detention

facilities.  *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir.

2007).  Here, plaintiff complied with the procedures set forth by Sedgwick County and its Sheriff's

Office.  Defendants' argument to the contrary directly contradicts a "General Provision" of Sheriff's

Order 120.01, which states:  "a grievance will not be refused if it is submitted in some other form."

Another form of a grievance is a *verbal* complaint.  Plaintiff verbally told Sergeant Hayes that

defendant Kendall raped him.  *Woodford* further supports the court finding that plaintiff submitted a

grievance:  "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses

can be identified and questioned while memories are still fresh, and evidence can be gathered and

preserved."  548 U.S. at 95.  This is precisely what happened.  Accordingly, the court finds that

defendants have not met the burden of proof for their failure-to-exhaust defense.[9]

---

[8] Even if it was disputed—which it is not—that plaintiff expressly told Sergeant Hayes that defendant Kendall raped him, it is likely that both Sergeant Hayes and Deputy Reed heard plaintiff repeatedly scream "you raped me, you raped me" while responding to the commotion.
[9] Because it is enough that plaintiff immediately lodged a verbal complaint while he was housed at the County Jail, the court need not address:  (1) whether plaintiff's written grievances that explicitly reference the incident also satisfy the grievance procedure, or (2) whether plaintiff's transfer to another detention facility rendered the administrative remedies unavailable to plaintiff, or (3) whether Sedgwick County's procedures violate the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff must appeal his grievance pursuant to Sheriff's Order 120.01 in order to fully exhaust the grievance procedure.  The court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust.  *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."  *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc)).  Defendants may have also prevented—however inadvertently—plaintiff from appealing his grievance by never logging plaintiff's verbal complaint.  Because plaintiff never received any response to his grievance, there are genuine issues of material fact as to whether there was anything to appeal.

Even if there was something to appeal, plaintiff's written grievances, which explicitly mention the incident, could be construed as an appeal.  Viewed this way, arguably, plaintiff appealed his verbal grievance twice.  To the first grievance, County Jail officials responded, explaining plaintiff was placed in lockdown for his own safety; to the second, they repeated the same explanation.  This suggests plaintiff received a final ruling on his appeal of the grievance.  Accordingly, viewing the evidence in a light most favorable to plaintiff, there are genuine issues of material facts that preclude summary judgment.

### D.  Plaintiff's Notice of Claim

An inmate must file a Notice of Claim no later than thirty days after the inmate receives a response to the grievance or sixty days after the incident giving rise to the claim, whichever is longer.[10] Defendants argue plaintiff's Notice of Claim did not comply with the Inmate Claim Procedure because

---

[10] Timeliness is undisputed.  But even if it were disputed, the alleged rape took place on June 3, 2012, and plaintiff's counsel filed a Notice of Claim on July 24, 2012.  Plaintiff therefore filed a Notice of Claim fifty-one days after the incident giving rise to the claim.  Thus, it was timely filed within sixty days of the incident giving rise to the claim.

it did not include two of the seven informational items required by § 16-104(4)—specifically, a list of all witnesses [§ 16-104(4)(c)] and a statement indicating whether plaintiff's detainment at the County Jail was pre- or post-conviction [§ 16-104(4)(f)].  Defendants' argument is unpersuasive for several reasons.

First, § 16-104(4) permits "substantial compliance."  Plaintiff expressly included five of the seven required pieces of information, which appears to be in "substantial compliance."  Also, plaintiff actually included *six* of the seven required pieces of information.  In his claim's concise statement of the factual basis, plaintiff specifically referenced three witnesses besides plaintiff and defendant Kendall—Sergeant Hayes, Deputy Reed, and the SANE-SART nurse, though the nurse's real name was not given.  Supplying six of the seven required criteria seems substantially compliant, especially since the only item plaintiff omitted was whether his incarceration at the County Jail was pre- or post-conviction.  Also, the county's response never mentioned plaintiff's noncompliance with § 16-104(4), suggesting the county did not need that information to properly respond.  These facts further support the court finding plaintiff substantially complied with § 16-104.

Second, the purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated.  *See Woodford*, 548 U.S. at 82 ("It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."); *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) ("Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  This purpose was satisfied. Sedgwick County was afforded time and opportunity to address plaintiff's complaint before a suit was filed.  And the county did so.  An investigation was immediately commenced, evidenced by plaintiff's prompt examination by a SANE-SART nurse.  Nineteen days later, on June 22, 2012, defendant

Kendall was criminally charged for multiple sex-related crimes against plaintiff and other inmates. The charging affidavit included statements by one of the Sedgwick County Sheriff detectives who participated in the investigation of plaintiff's June 3, 2012 complaint.

Moreover, the sheriff's office corroborated all of this in a July 13, 2012 press release, which was disseminated in response to a Kansas.com media report about the inaction of Sedgwick County officials in investigating defendant Kendall.  The Sheriff's Office deviated from its standard practice and publicly rebutted the media report's quote, providing an investigation timeline and clarifying the methods and procedures it had in place for this type of situation.  (Doc. 42-2.)  On these facts, Sedgwick County was aware of plaintiff's grievance and the county was afforded ample time and opportunity to address the complaints internally before plaintiff filed suit.  Plaintiff didn't file his Notice of Claim until July 24, 2012—a month *after* defendant Kendall was charged.

Third, the omissions that defendants argue are fatal to plaintiff's Notice of Claim did not prevent the sheriff's office or the county from responding to plaintiff's claim.  Plaintiff filed his Notice of Claim on July 4, 2012.  Almost four months later, on November 20, 2012, Sedgwick County denied plaintiff's claim in its entirety for reasons independent of plaintiff's Notice of Claim not complying with § 16-104(4).  Defendants were therefore provided, at the very least, four additional months to internally investigate and address plaintiff's claim.

## IV.  Conclusion

For the foregoing reasons, the court finds that genuine issues of material facts remain in dispute and therefore defendant is not entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that defendants' motions (Docs. 33 & 35) are denied.

Dated this 19th day of November 142014, at Kansas City, Kansas.

s/ Carlos Murguia

**CARLOS MURGUIA**
**United States District Judge**